BILLY J. WILLIAMS, OSB #901366
United States Attorney
District of Oregon
**CHRISTOPHER CARDANI**
Assistant United States Attorney
Christopher.Cardani@usdoj.gov
1000 SW Third Ave., Suite 600
Portland, OR  97204-2902
Telephone:  (503) 727-1000
Attorneys for United States of America

### UNITED STATES DISTRICT COURT

### DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:20-mj-00153** |
| **v.** | **MOTION TO REVOKE**<br>**RELEASE ORDER** |
| **JACOB MICHAEL GAINES,** | |
| **Defendant.** | |

Defendant was arrested after he attacked the Hatfield Courthouse with a sledgehammer and intentionally struck a responding Deputy U.S. Marshal with it.  Following his first appearance before a Magistrate Judge, he was ordered released despite his danger to the community and his flight risk.  This Court should revoke the Magistrate Judge's Release Order.

## I.    Factual & Procedural Background

Defendant was arrested during the early morning hours of Saturday, July 11, 2020, after he assaulted a federal agent assigned to protect the Hatfield Courthouse.  On July 12, 2020, a Magistrate Judge signed a criminal complaint (3:20-mj-00153) (Attachment 1), finding probable cause to believe that this defendant committed a felony violation of 18 U.S.C. 111(a)(1) and (b) (assault with a dangerous weapon), and issued an arrest warrant.  On July 13, 2020 defendant

**Motion to Revoke Release Order**                                                                          **Page 1**

had his first appearance before a different Magistrate Judge.  The Federal Defender's Office was appointed to represent defendant.  A release hearing ensued.  The government asked that defendant continue to be detained as a danger to the community and as a risk of non-appearance for court proceedings.  Defendant sought release.  Pretrial Services issued a report, recommending that defendant be released with general and specific conditions.  After argument, the Magistrate Judge ordered defendant released, with general and specific conditions.  The government requested a brief stay, in order to pursue this review.  The Court stayed its ruling until 5:00 p.m. on July 14, 2020.

## II.    Applicable Law

### A.    Standard of Review

Review of a magistrate judge's release order is *de novo*.  *United States v. Koenig*, 912 F.2d 1190, 1192-93 (9th Cir. 1990).  However, the court "is not required to start over in every case, and proceed as if the magistrate's decision and findings did not exist."  *Id*. at 1193.  Rather, the court should "review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference."  *Id*.

### B.    Legal and Factual Standards for Release Decisions

A defendant shall be detained pending trial where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e).  The government bears the burden of establishing danger to the community by clear and convincing evidence; risk of flight need be proven by a preponderance of the evidence.  *United States v. Aitken*, 898 F.2d 104, 107 (9th Cir. 1990); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

**Motion to Revoke Release Order**                                                    **Page 2**

A judicial officer is to consider the following factors in rendering a detention decision: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's character, physical and mental condition, family and community ties, employment, financial resources, past criminal conduct, history relating to drug or alcohol abuse, and supervision status at the time of the current offense; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); *Hir*, 517 F.3d at 1086. The Federal Rules of Evidence do not apply in pretrial detention proceedings. Fed. R. Evid. 1101(d)(3); 18 U.S.C. § 3142(f)(2)(B). Accordingly, both the government and the defense may present evidence by proffer or hearsay. *Winsor*, 785 F.2d at 756.

## III.    Defendant is a Danger and a Risk of Non-appearance; He Should be Detained.

No release conditions will reasonably assure community and law enforcement safety, and no combination of conditions can reasonably assure defendant's appearance.

***Nature of the Charges and Strength of the Evidence***:

As set forth in the attached affidavit, defendant engaged in vandalism and property destruction, and then assaulted a Deputy U.S. Marshal. The victim, referred to as DUSM1 to protect his identity, was working on July 11, 2020, to protect the Hatfield Courthouse (USCH) from further damage already inflicted during weeks of criminality. Since May 28, 2020, the USCH has experienced significant damage, through broken glass and fixtures, vandalized or stolen security cameras and access control devices, and firework mortars and tear gas fired inside

the lobby.  Agents attempting to protect the building have been subjected to threats, high

intensity lasers targeting officer's eyes, and thrown rocks, bottles and balloons filled with paint.

In the early morning hours of Saturday, July 11, 2020, DUSM1 and a support team were

inside the USCH, near the employee entrance on the south side of the building.  Based on

damage previously caused by vandalism to the USCH, a plywood barricade had been erected to

help prevent agitators from unlawfully entering the USCH.  As chronicled in the below excerpt

from the affidavit in support of the criminal complaint defendant, who is 6' tall and weighs 295

pounds, attacked the wooden barricade surrounding the glass employee entrance with a

sledgehammer, and when a DUSM approached him, defendant attacked the DUSM with that

same hammer:

DUSM1 related the following:  He was on duty on July 11, 2020 and attired in
tactical law enforcement gear with "Police" markings.  At approximately 1:10 a.m., the
USMS tactical team was told to be prepared to deal with a subject, later identified as
GAINES, banging on the employee (south side) door of the Hatfield USCH.  There was
concern by law enforcement that the wooden plywood door would be breached and, if so,
the inner glass door may be broken or compromised, causing an immediate danger to
personnel inside the building.  The plan was for a United States Border Patrol Tactical
Team (BORTAC) to come out of another exterior door while the USMS team came out
the south exterior door to apprehend GAINES.  DUSM1 could hear multiple banging
against the wooden plywood door and could tell something more solid than a fist was
being used against the wood.  DUSM1 was the front person of the USMS team near the
wooden plywood door.  From inside the building, he observed a hole get punched
through the door and immediately relayed the information on the radio.

11.    At approximately 1:15 a.m., the command was given to go outside and
detain GAINES.  DUSM1 attempted to push the wooden plywood door open but
GAINES was pushing back against it.  GAINES yelled: "I can see you mother fuckers
through the cracks!"  GAINES also yelled: "You mother fuckers are gonna' have to kill
me," approximately three to four times.  DUSM1 was able to push the door open, stepped
out, and immediately turned right towards GAINES.  DUSM1 saw the hammer in
GAINES' right hand and grabbed GAINES' right wrist with his left hand while trying to
grab GAINES with his right hand.  GAINES was able to first strike DUSM1's left
shoulder with the hammer in a downward motion and then in a sweeping motion struck
the back of DUSM1's upper back/lower neck when GAINES pulled the hammer back.

**Motion to Revoke Release Order**                                                    **Page 4**

GAINES pulled away and was able to cock the hammer back over his own head and in a downward motion, strike DUSM1 directly for the third time, this time on the upper back, behind DUSM1's head.  GAINES continued to pull away but DUSM1 held onto him and other team members assisted in grabbing GAINES and placing him on the ground.  DUSM1 and other team members handcuffed GAINES with a plastic zip tie.   DUSM2 grabbed the hammer and gave it to DUSM1, who brought it back into the USCH for evidence processing.  GAINES was brought back into the USCH for processing.[1]

The affidavit included this photograph, showing the hole in the USCH plywood barricade from defendant Gaines' hammer strikes:



The affidavit also included these photographs of the hammer defendant used to strike DUSM1, described as 13.75" in length and weighing 4 pounds:

/ / / /

/ / / /

---

[1] As explained in the affidavit, law enforcement obtained a video of the incident, which was posted on a Twitter account.  Still shots from that video are contained in the affidavit.

**Motion to Revoke Release Order**                                            **Page 5**





The evidence is strong that defendant intentionally assaulted DUSM1 with a dangerous

weapon. DUSM1's protective gear and defensive moves while being assaulted likely prevented

him from sustaining serious injuries.  Had defendant been successful in breaching the building, it is likely that he and others with nefarious intent would have caused further damage to the USCH and personnel.

Defendant is charged in the complaint with a felony violation of 18 U.S.C. § 111(a)(1) and (b).  Since he used a dangerous weapon during the assault, the offense is punishable by up to 20 years in prison.[2]  The weight of the evidence and the seriousness of the violent offense both support defendant's detention as a danger to the community.  18 U.S.C. §§ 3142(g)(1) and (2).

### *History and Characteristics of the Defendant*

Relevant information about defendant is contained in the pretrial service officer's report. He does not have a stable residence or community ties.  He is from Texas, but resided with his father in California until he turned 19.  In May 2019, Gaines moved to Bend, Oregon for a few months, returned to Texas until May 2020, came back to Bend for a month, but then relocated to Portland.

Defendant and his wife live in a bus.  From May 2019 forward, they have moved back and forth from Texas, Bend and Portland.  Defendant is a self-described transient and presently parks his bus on a street in North Portland.  Of great concern, defendant stated he has three guns in his bus; two handguns and a shotgun.  He is unemployed and suffers from mental health issues, including anger episodes stemming from ADHD.  He recently quit two prior jobs after working there for only a few weeks.  Other than his wife, he has no known family ties in Oregon.

---

[2] 18 U.S.C. § 111(a)(1) makes it an offense to forcibly assault, resist, oppose, impede, intimidate, or interfere with any person designated in 18 U.S.C. § 1114 while engaged in or on account of the performance of official duties. Under § 111(a), simple assault is a misdemeanor, but where the assaultive acts involve physical contact with the victim, the offense is a felony punishable by imprisonment up to 8 years.  18 U.S.C. § 111(b) provides for an enhanced penalty; where the assaultive conduct involves the use of a deadly or dangerous weapon, or causes bodily injury, the offense is punishable by a term of imprisonment up to 20 years.

**Motion to Revoke Release Order**                                              **Page 7**

Defendant acknowledges daily use of marijuana, and has experimented with LSD and hallucinogenic mushrooms.  His wife stated that defendant drinks alcohol to excess.

Defendant's personal characteristics and present circumstances demonstrate that his volatility poses a risk of harm to the public generally, and to law enforcement in particular.  His own words to law enforcement: "You mother fuckers are gonna' have to kill me," - shouted while he was attacking the USCH with a sledge hammer – are illuminating.  Defendant is an angry young man who abuses alcohol and controlled substances while possessing firearms and a sledge hammer.   And, given his transient status and the limitations posed by the COVID-19 pandemic, he cannot be reliably monitored pretrial.  His residence is on wheels and his ties to this community are minimal.  There is great risk that he will not appear for future court proceedings to hold him accountable for his violent assault.

Under § 3142(g)(3)(A) and (B), the court is required to focus on defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past history relating to drug or alcohol abuse, criminal history, record concerning appearances at court proceedings, and whether he is on court release. Aside from the absence of any known criminal history, all of the remaining statutory factors weigh in favor of detaining him pending trial.

/ / / /

/ / / /

/ / / /

**Motion to Revoke Release Order**                                                     **Page 8**

IV.    **CONCLUSION**

There is clear and convincing evidence that defendant's release poses a danger to the community, and his risk of non-appearance has been established by a preponderance of evidence. This Court should grant this motion, revoke the Magistrate Judge's release order, and order that defendant be detained pending trial.

Dated: July 14, 2020.                          Respectfully submitted,

                                               BILLY J. WILLIAMS
                                               United States Attorney

                                               *s/Christopher Cardani*
                                               CHRISTOPHER CARDANI
                                               Assistant United States Attorney