Bryan Francesconi
Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, Oregon  97204
(503) 326-2123 Telephone
(503) 326-5524 Facsimile
Bryan_francesconi@fd.org

Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:20-mj-00153 |
| Plaintiff, | DEFENDANT'S RESPONSE TO THE GOVERNMENT'S MOTION TO REVOKE RELEASE |
| v. | |
| JACOB MICHAEL GAINES | ORAL ARGUMENT REQUESTED |
| Defendant. | |

The defendant, Jacob Michael Gaines, through counsel, Bryan Francesconi, offers his response to the government's motion to revoke The Honorable Stacie Beckerman's order releasing Mr. Gaines.  This Court should reach the same conclusion that both Judge Beckerman and U.S. Pretrial Services reached after considering the same facts now before the Court.  Under the Bail Reform Act Of 1984, release is favored in all but the rarest circumstances, and the government bears the burden of proving that no combination of conditions will assure the safety of the community or the defendant's appearance at court.  The government has not met that burden in this case as there are substantial conditions in place that will reasonably assure Mr. Gaines appearance and safety of the community.

I.        **Legal Standards.**

The district court reviews the release decision of the magistrate *de novo*. *United States v. Koenig*, 912 F.2d 1190, 1191 (9th Cir. 1990).

A defendant who is confined pending trial suffers a significant loss of liberty implicating the due process clause of the Fifth Amendment and the excessive bail clause of the Eighth Amendment. *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985). "[The] traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction." *Stack v. Boyle*, 342 U.S. 1, 4 (1951). "Unless [the] right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning." *Id*. at 4.

The Bail Reform Act mandates release of a person pending trial unless the court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). The charges in this case do not trigger the rebuttable presumption for detention in 18 U.S.C. § 3142(e)(3)(A) and (B). As a result, the government must convince this court that there are no set of conditions that will "*reasonably assure* the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(g) (emphasis added). Doubts regarding the propriety of release should be resolved in the defendant's favor. *Motamedi*, 767 F.2d at 1405. *Id*. (citations omitted). Tipping the balance in favor of the defendant derives from "the presumption of innocence and its corollary that the right to bail should be denied for only the strongest reasons." *Id*. at 1407.

A finding that a defendant is a danger to any other person or the community must be supported by "clear and convincing evidence." 18 U.S.C. § 3142(f)(2)(B). With respect to the

risk of nonappearance, the government's burden is a *clear preponderance* of the evidence. *Motamedi*, 767 F.2d at 1306. "The Ninth Circuit's 'preponderance of the evidence' standard in pretrial detention matters is more than the usual 'tips the scales slightly' test applied in civil cases." *United States v. Chen*, 820 F. Supp. 1205, 1208 (N.D. Cal. 1992). "Section 3142 does not seek ironclad guarantees, and the requirement that the conditions of release 'reasonably assure' a defendant's appearance cannot be read to require guarantees against flight." *Id*.

## II.    Alleged Conduct Factual Background [1]

Mr. Gaines is charged by criminal complaint with one count of Assault of Federal Officer in violation of 18 U.S.C. §§ 844(a)(1) and (b). Due to the ongoing civil rights-based protests occurring on a nightly basis in front of the Multnomah County Detention Center (MCDC) and the Mark O. Hatfield United States Federal Courthouse (the Hatfield Courthouse), Mr. Gaines was arrested on the evening of July 11, 2020. As the Court is aware, these protests are part of a national movement seeking to address systemic and racial injustice within law enforcement and the criminal justice system in the aftermath of the killing of George Floyd. *See e.g.* Derrick Bryson Taylor, *George Floyd Protests: A Timeline,* NY TIMES (July 10, 2020) https://www.nytimes.com/article/george-floyd-protests-timeline.html. While these protests have had some unfortunate results and impacts, the overall view among the public remains overwhelmingly positive, reflecting the important social work the protestors are engaging in on a nightly basis. *See e.g.* Larry Buchanan, Quoctrung Bui, and Jugal K. Patel, *Black Lives Matter May Be The Largest Movement In U.S. History*, NY Times (July 3, 2020) https://www.nytimes.com/interactive/2020/07/03/us/george-floyd-protests-crowd-size.html. On

---

[1] Except where expressly stated, the facts contained in this recitation are taken from the criminal complaint filed in this matter. In noting these facts, the defense does not stipulate to or concede their truth.

the night of July 11, 2020, Mr. Gaines was protesting in front of the Hatfield Courthouse, along with approximately 250 of his fellow citizens, for ostensibly forthright and noble reasons.

Unfortunately, the events of July 11, 2020 also lead to Mr. Gaines' arrest. It is important to note that Mr. Gaines has been not been provided with discovery other than that contained within the criminal complaint and one video that the Oregon Federal Public Defender independently obtained. According to affidavit of Senior Special Agent David Miller of the Federal Protective Service that accompanied the criminal complaint, at approximately 1:00 a.m., Mr. Gaines was observed using a hammer to damage the wooden entrance at the Hatfield Courthouse. The affidavit included this photograph, showing the plywood door Mr. Gaines alleged struck:



On the other side of the door stood approximately six members of the Federal Protective Service fitted out in military style riot gear. The affidavit included this photograph of the officer designated the victim in this case:

Page 4   DEFENDANT'S RESPONSE TO THE GOVERNMENT'S MOTION TO REVOKE RELEASE



As the six agents pushed open the door, Mr. Gaines and another individual pushed to keep the door closed. Within seconds, the six agents had streamed out, and seized Mr. Gaines by force. A video of the entire sequence can be viewed here: https://twitter.com/pdocumentarians/status/1282062863268372480?s=12. Contrary to the depiction of events summarized in Agent Miller's affidavit, the video shows the victim agent immediately grab for and obtain partial possession over the hammer held in Mr. Gaines right hand. A struggle ensued between the victim agent and Mr. Gaines. As the video shows, Mr. Gaines eventually wrenched one hand free, begin to stumble backwards, and make one concerted swing downwards with the hammer in his right hand. The blow appears to glance off the victim agent's vest. Mr. Gaines is thereafter immediately dosed with mace and taken to the ground by agents. According to Agent Miller's affidavit, the victim was interviewed a short time later and confirmed "[d]ue to the protective gear [the victim] was wearing, he did not display any visible bruising in the areas where Gaines had struck him with the hammer." Affidavit of Agent Miller at 6.

In its motion, the Government writes "[h]ad defendant been successful in breaching the building, it is likely that he and others with nefarious intent would have caused further damage to the USCH and personnel." ECF 8 at 7. This argument is equal parts conjecture and inflammatory. Mr. Gaines has never been inside the federal courthouse nor had any intent to be. Rather, in an act of civil disobedience, as the video shows, Mr. Gaines hit a temporary plywood façade with a hammer. Consequently, he quickly found himself facing six heavily armed federal agents charging at him. Did Mr. Gaines act instinctively and in self-defense? Were his actions lawful? A jury will make those determinations. Nevertheless, to extrapolate from the brief encounter an overarching "nefarious intent" to injure courthouse personnel is to engage in evidence-less hyperbole.

## III.   Argument

### A.   The Statutory Factors That Must Be Considered In Deciding Whether A Person Should Be Released Pending Trial Weigh In Favor Of Releasing Mr. Weier.

In evaluating whether a defendant should be released, the court considers the following statutory factors:

(1) the nature and circumstances of the offense charged […];

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including--

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

**B.     The Nature And Circumstances Of The Offense And Weight Of The Evidence.**

Prior to and during Mr. Gaines' detention hearing, both Judge Beckerman and U.S. Pretrial appropriately focused on Mr. Gaines the individual, rather than the Government's characterizations of the conduct.  Mr. Gaines was participating in the protests on July 11, 2020, as almost all individuals coming downtown are, for laudable reasons.  The Government alleges that during one of these lawful protests, Mr. Gaines made a serious mistake when he banged a hole into the façade and followed that mistake up with the serious alleged conduct involving the agent victim.  The video shows that the events of this case happened very quickly.  At the time of the downward swing, six federal officers clad in military style gear were quickly overwhelming Mr. Gaines.  The victim, by his own account, suffered no bruises.  Furthermore, the Ninth Circuit has cautioned that a review of detention hearing, "the weight of the evidence is the least important of the various factors."  *Motamedi*, 767 F.2d at 1408.  If the court unduly emphasizes the weight of the evidence, the risk exists that the Court will "impermissibly make[] a preliminary determination of guilt," such that "the refusal to grant release could become in substance a matter of punishment." *Id*.  Thus, "evidence of guilt is relevant only in terms of the likelihood that the person will fail to appear or will pose a danger to the community." *United States v. Ward*, 63 F. Supp. 2d 1203, 1208 (C.D. Cal. 1999).

**C.     Mr. Gaines' History and Characteristics And Criminal History.**

Mr. Gaines is a 23-year old United States citizen.  Presentence Report at 1.  Mr. Gaines has never been convicted of a crime and he reported to Pretrial that this was the first arrest of his life.  Mr. Gaines does not own a passport and he has never left the United States.  Mr. Gaines and his wife have been married for three years.  Mr. Gaines' wife works in Portland and Mr. Gaines

recently left his most recent employer in the Portland area. Prior to that, Mr. Gaines was employed at a bakery in Bend and has a long history as a ranch hand in Oregon and Texas. When asked about a five-block prohibition around the courthouse by Pretrial Services, Mr. Gaines emphatically guaranteed he would not be found at any protests moving forward. Mr. Gaines does not appear to have substantial substance abuse issue nor mental health concerns that should prove an impediment to his release.

Other than the conduct of this case, the Government's primary argument for detention revolves around the scope and breadth of Mr. Gaines community ties. Mr. Gaines acknowledges living in a bus with his wife and having moved back and forth between Texas, Bend and Portland since May 2019. However, Mrs. Gaines is employed in Portland and the couple have every intent on remaining in Portland moving forward. Mr. and Mrs. Gaines live in a bus that is always located in the same location adjacent to a specific park in North Portland and they are currently on a waiting list for a spot at an RV park.[2] Not everyone charged with federal crimes has the luxury of a home or apartment to live in. The important consideration is whether Pretrial Services will have the means of always finding and communicating with Mr. Gaines. Pretrial Services has indicated they are comfortable with this arrangement and the Court should be as well. Of course, if the Court is not, a boot on the bus, a GPS ankle bracelet or the RRC are always options. In short, the Court has ample resource options available that do not involve a significant loss of liberty implicating the due process clause of the Fifth Amendment and the excessive bail clause of the Eighth Amendment. *Motamedi*, 767 F.2d at 1405. The government also mentioned concerns

---

[2] Mr. Gaines is also fine with US Pretrial having a boot placed on his bus as an interim measure.

regarding the firearms owned by Mr. Gaines and his wife in their bus. However, those concerns will be addressed as the guns will be removed prior to or within 24 hours of Mr. Gaines' release.

## CONCLUSION

Mr. Gaines is charged by criminal complaint with a crime that carries a presumption of release. The government cannot meet its burden of proving by clear and convincing evidence that no condition or combination of conditions exists that can assure the safety of the community or that he will appear for court. In fact, the Court has a variety of options at its disposal. All are appropriate for a man with no criminal history. Accordingly, the Court should release Mr. Gaines subject to the least restrictive combination of conditions that the Court deems necessary. 18 U.S.C. § 3142(c)(1)(B).

RESPECTFULLY submitted this 15th day of July 2020.

*/s/ Bryan Francesconi*
Bryan Francesconi
Assistant Federal Public Defender